IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Abeba Desta,**<br>1028 48th Street NE #103<br>Washington, DC 20019<br><br>**Plaintiff,**<br><br>           v.<br><br>**Mike Pompeo,**<br>Secretary,<br>U.S. Department of State,<br>2201 C Street, NW<br>Washington, DC 20520<br><br>**Defendant.**<br><br><br><br><br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:21-cv-00459<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT
### (Gender Discrimination & Retaliation)

Pursuant to Federal Rule of Civil Procedure Rule 3, Plaintiff Abeba Desta (hereafter "Plaintiff"), by her undersigned attorney, hereby files this Complaint.

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f); the Rehabilitation Act of 1973, as amended; the Americans with Disabilities Act (ADA) of 1990; and the ADA Amendments Act of 2008 (ADAAA).

2. Plaintiff contacted an EEO Counselor on November 14, 2016.

3. Plaintiff's claim was not resolved through the EEO counseling process and the EEO Counselor issued a "Notice of Right to File" on February 9, 2017.

4. Plaintiff filed a formal complaint of discrimination with the Department on February 23, 2017.

5. The complaint was accepted by the Department for processing pursuant to 29 C.F.R. § 1614.103, *et seq.*

6. Investigation of this claim was conducted, and the Report of Investigation (ROI) and notice of rights were sent to Plaintiff and her representative on November 17, 2017.

7. Plaintiff requested a hearing before EEOC on or about December 14, 2017.

8. Plaintiff was assigned EEOC case number 570-2018-00315X.

9. On August 26, 2019, the EEOC Administrative Judge issued an Order of Dismissal Without Prejudice after conferring with all parties.

10. In the Administrative Judge's August 26, 2019 Order, the judge stated that failing to renew the hearing request would preclude Plaintiff from requesting a hearing, and thus the Agency (i.e. Defendant) should issue a Final Agency Decision in accordance with 29 C.F.R. § 1614.110(b).

11. The EEOC Administrative Judge remanded the complaint for a final decision based on Plaintiff's failure to timely submit a request for renewal of her hearing request at EEOC on or before August 30, 2020.

12. In accordance with 29 C.F.R. § 1614.110(b), the Department issued a Final Agency Decision on November 24, 2020.

13. This Complaint is filed within 90 days after Plaintiff received the Notice of Right to Sue on her EEOC complaint.

14. Plaintiff has exhausted the administrative remedies available to her under 42 U.S.C. §§ 2000e, *et seq.*, and all conditions precedent have occurred or been performed.

15. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), as Defendant U.S. Department of State (hereinafter "Defendant") has extensive and deliberate contacts in this District, including a business location in Washington, DC, at which Plaintiff performed work during her tenure with Defendant.

## II. THE PARTIES

16. Plaintiff is a resident of Washington, D.C. and a former employee of Defendant, working in Washington, D.C.

17. Plaintiff's national origin is Ethiopian.

18. Plaintiff is disabled, or regarded as being disabled, because she has been diagnosed with a chronic hearing problem since the age of seven (7) years old.

19. Defendant is an administrative agency formed under the Executive Branch of the United States Federal Government, headquartered at 2201 C Street, NW, Washington, D.C. 20520.

## III. MATERIAL FACTS

20. Plaintiff was employed as an OBXtek, Inc., Contractor, examining and adjudicating medical claims in the Bureau of Medical Services (MED), Finance Office, Medical Claims Section, for the United States Department of State (DOS) in Washington, D.C.

21. Plaintiff worked as a DOS Contractor from approximately November 4, 2007 to October 19, 2016.

22. Plaintiff's first-line supervisor was Harold Hodges ("Hodges"), Budget Officer, Grade Level GS-14.

23. Plaintiff's second-line supervisor was Assefa Kidane, Deputy Executive Director, Grade Level GS-15.

24. Throughout the course of her employment with DOS, Plaintiff was subjected to repeated hostile and demeaning comments from her first-line supervisor, Hodges.

25. Specifically, Plaintiff observed that Hodges made demeaning comments on a regular basis during staff meetings, when she met with him one-on-one, and he stopped at her cubicle from time to time.

26. On more than one occasion, Plaintiff observed Hodges make comments including, but not limited to "she can't hear" and "she has a hearing problem", which were made in the presence of other staff members.

27. Hodges also stopped by Plaintiff's cubicle on multiple occasions and called her different nicknames mimicking her real name, like "Aboda" and "Adeba".

28. Other employees laughed at Plaintiff when they heard Hodges insults.

29. Plaintiff was shocked, frustrated, and angry as a result of these comments from Hodges and the reactions that she observed from colleagues.

30. Plaintiff observed that Hodges would at times yell these names and Plaintiff corrected him, while also pleading with Hodges not to yell at her.

31. Hodges did not end the hostile treatment towards Plaintiff.

32. Plaintiff also observed that Hodges regularly, constantly, and repeatedly told her that she "was not fit to work in the medical claims section" and was "incompetent".

33. Plaintiff found Hodges to be a toxic, argumentative, punitive, and overbearing leader that routinely threatened employees and was quick to react.

34. Many employees within the Budget and Medical Claims Section were scared and discouraged from making formal complaints because they did not want to lose their jobs, and observed that management would not help them.

35. Hodges routinely requested to fire similarly-situated employees of Plaintiff.

36. Specifically, Plaintiff was aware that Hodges fired Lydia Hagos during Plaintiff's tenure with Defendant.

37. Lydia Hagos' national origin is Eritrean.

38. Specifically, Plaintiff was aware that Hodges also fired Rachida El Alouani during Plaintiff's tenure with Defendant.

39. Rachida El Alouani's national origin is Moroccan.

40. Hodges conduct amounted to a campaign on intimidation and ultimately termination prejudiced against women of African origin, including Plaintiff.

41. Plaintiff communicated her concerns Mr. Gonzalez, Ms. Matthews, Joseph Kinny, Mr. Albrecht, Mr. Kidane, and Ms. Waters, all of whom were DOS upper management figures.

42. These DOS upper management figures told Plaintiff that they would "see what [they] could do".

43. Nonetheless, no action was taken against Hodges to disrupt his hostile and demeaning campaign against Plaintiff in the workplace.

44. At one point during Plaintiff's tenure, an Office of Civil Rights (OCR) official interviewed the Budget and Claims Section staff regarding Hodges bullying and a hostile work environment.

45. Plaintiff is unaware of the results of that OCR investigation.

46. Plaintiff believes that the Executive Office did meet with Hodges regarding his behavior, but ultimately Hodges remained as the supervisor.

47. Subsequently, Plaintiff also reported her observations and allegations of Hodges' behavior to Mirinda Lane, the COR for her contract for a period of time.

48. Plaintiff reported her treatment on multiple occasions to Ms. Greenlee, Senior Budget Analyst and Plaintiff's colleague, between October 2014 and October 16.

49. Plaintiff often was shaking, crying, and visibly upset when reporting the treatment to Ms. Greenlee.

50. Plaintiff relayed to Ms. Greenlee that Hodges spoke to her in a condescending tone, and that Hodges even stated to Plaintiff that he did not understand her "because of the language barrier".

51. Ms. Greenlee did report Plaintiff's complaints to the Executive Directors and demanded that something be done to relieve Plaintiff because "no one should have to come to work under those stressful conditions, especially when Mr. Hodges behavior was not warranted".

52. Ms. Greenlee was aware of Hodges conduct because she had also been bullied and harassed by him, before management removed her from Hodges supervision in 2012.

53. Ms. Greenlee observed that Plaintiff's national origin played a role in Plaintiff's harassment because although Plaintiff attended evening courses for writing and

communication to enhance her job performance, the harassment from Hodges persisted.

54. Specifically, Ms. Greenlee observed that Hodges continued to behave in a demeaning manner towards Plaintiff *because* of her accent.

55. These incidents collectively affected Plaintiff's ability to do her job, because despite being a very productive employee, Plaintiff had to endure Hodges' bullying, hostility, and bias against her.

56. Plaintiff was terminated on October 19, 2016 after ten (10) years of employment.

57. On the occasion that she was terminated, Plaintiff was informed by Dawn Mathes ("Mathes"), Project Manager, OBXtek, Inc., that her supervisor, Hodges, "no longer wanted her services".

58. Plaintiff was also informed by Mathes that Hodges claimed Plaintiff had not done anything wrong, it was not a performance issue, and that it was unclear whether Hodges would be hiring behind Plaintiff.

59. Plaintiff later learned that Hodges indeed did attempt to hire a replacement to fill Plaintiff's position.

60. Plaintiff never received an explanation as to why she was terminated from the position.

61. Plaintiff was terminated despite being "the most efficient and accurate employee in the medical claims section".

62. For example, Plaintiff created more claim records than other employees in fiscal year ("FY") 2011 through 2012.

63. Specifically, she created 2130 claim records in FY 2016, 1742 in FY 2015, 1552 in FY 2014, 1472 in FY 2013, 1565 in FY 2012, and 1573 in FY 2011.

64. Plaintiff was surprised at the termination.

65. Plaintiff was aware that Paul Wedderien, Executive Director, "ordered" Hodges to bring Plaintiff back to work.

66. Nonetheless, no action was taken to return Plaintiff to her employment before DOS.

67. As a result of Defendant's actions, Plaintiff has suffered loss of income, emotional distress, and pecuniary damages.

### IV. Statement of Claims

### Count I: National Origin Discrimination

68. Plaintiff adopts and incorporates by reference ¶¶ 1-67 above.

69. Plaintiff is of Ethiopian national origin.

70. Defendant unlawfully discriminated against Plaintiff on the basis of her national origin in violation of Title VII.

71. Employees of the Defendant specifically made discriminatory statements regarding Plaintiff's national origin.

72. Despite putting Defendant on notice of the discriminatory and unwanted behavior, Plaintiff continued to be subjected to a persistent pattern of discriminatory harassment from her supervisor.

73. Defendant failed to intervene and investigate the allegations.

74. Following the comments, Plaintiff suffered adverse employment action when she was abruptly terminated from her employment, on the basis of her national origin, in close temporal proximity to the complaints that she voiced to management.

75. Plaintiff's similarly situated non-African counterparts were not subjected to such adverse

action.

76. As a result of Defendant's violation of Title VII, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## **Count II: Disability Discrimination under Americans with Disabilities Act**

77. Plaintiff adopts and incorporates by reference ¶¶ 1-76 above.

78. Section 501 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits federal employers from discriminating against qualified individuals with disabilities and requires them to take affirmative action to employ and advance in employment qualified individuals with disabilities.

79. Section 503 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits employment discrimination based on disability and requires affirmative action in the hiring, placement, and advancement of people with disabilities by federal contractors or subcontractors who have federal contracts or subcontracts in excess of $10,000.

80. Plaintiff, at all times, was a qualified individual with a disability, or an individual regarded as being disabled, because she was diagnosed with a chronic hearing disability since the age of seven (7).

81. Prior to her termination, Plaintiff was fulfilling DOS' legitimate employment expectations as an employee.

82. Defendant unlawfully discriminated against Plaintiff when Defendant discriminated against Plaintiff on the basis of her disability.

83. Ultimately, Plaintiff suffered adverse action in the continued harassment activity from management, and ultimately, her unlawful termination on October 19, 2016.

84. As a result of Defendant's violations of the Rehabilitation Act of 1973, as amended, Plaintiff

has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

### Count III: Disability Discrimination under ADA

85. Plaintiff adopts and incorporates by reference ¶¶ 1-84 above.

86. The Americans with Disabilities Act makes it illegal to harass an applicant or employee because he or she has a disability.

87. Plaintiff, at all times, was a qualified individual with a disability, or an individual regarded as being disabled, because she was diagnosed with a chronic hearing disability since the age of seven (7).

88. Prior to her termination, Plaintiff was fulfilling DOS' legitimate employment expectations as an employee.

89. Defendant unlawfully discriminated against Plaintiff when Defendant repeatedly discriminated against Plaintiff on the basis of her disability with severe and pervasive hostile remarks and treatment.

90. Ultimately, Plaintiff suffered adverse action in the continued harassment activity from management, and ultimately, her unlawful termination on October 19, 2016.

91. As a result of Defendant's violations of the the Americans with Disabilities Act (ADA) of 1990; and the ADA Amendments Act of 2008 (ADAAA), Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

### V. REMEDIES SOUGHT

92. WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting him the following relief from Defendant:

    a. A declaratory judgment that defendant discriminated against Plaintiff, as

      alleged herein in Counts I, II and III;

b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Plaintiff;

c. Compensatory and punitive damages, pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

d. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

e. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

f. Such other and further relief as to the Court seems just and warranted.

## VI. JURY TRIAL DEMAND

93. Plaintiff requests a jury trial on all issues of fact and damages arising herein.

    Respectfully submitted,

    */s/Matthew Hunter*

    MATTHEW HUNTER (DC Bar No 1510741)
    Simply Law, LLC
    3 Bethesda Metro Center, Suite 700
    Bethesda, MD 20814
    T: (202) 630-5123
    matthew@simplylawllc.com
    Attorney for Plaintiff