# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADAM BERNAHU, Administrator of the Estate of ABEBA DESTA,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>ANTONY BLINKEN,[1] in his official capacity as Secretary, U.S. Department of State,  )<br><br>Defendant.  ) | Civil Action No. 21-459 (RBW) |

## MEMORANDUM OPINION

The plaintiff, Abeba Desta,[2] brought this civil action against the defendant, Mike

Pompeo, in his official capacity as Secretary of the United States Department of State (the

"Department"), asserting claims of: (1) discrimination based upon the plaintiff's national origin,

and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a)

("Title VII"), see Amended Complaint ("Compl.") ¶¶ 68–76, ECF No. 1; (2) discrimination

based upon her disability, in violation of the Rehabilitation Act, 29 U.S.C. § 794, see id. ¶¶

77–84; and (3) discrimination based upon her disability, in violation of the Americans with

---

[1] Antony Blinken is the current Secretary of the United States Department of State, and he is therefore substituted for Mike Pompeo as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The plaintiff, Abeba Desta, initiated this civil action on February 22, 2021.  See Amended Complaint ("Compl.") at 1.  However, on September 13, 2021, the plaintiff's counsel filed a notice of the plaintiff's death, stating that the plaintiff "died on July 5, 2020."  Statement of Notice of Death at 1, ECF No. 9.  The plaintiff's counsel moved to "substitute [the p]laintiff Abeba Desta with Adam Bernahu, Administrator of the Desta Estate, as [the p]laintiff in this case."  Motion to Substitute Administrator as Party at 1, ECF No. 10.  On January 13, 2022, the Court granted this motion and ordered that Adam Bernahu be substituted as the plaintiff in this case.  See Minute ("Min.") Order (Jan. 13, 2022).  Therefore, Adam Bernahu is now the named plaintiff in this case.  However, for purposes of this Memorandum Opinion, the Court will refer to Abeba Desta as the plaintiff.

Disabilities Act (the "ADA"), 42 U.S.C. § 12101, and the ADA Amendments Act of 2008 (the "ADAAA"), 42 U.S.C. § 12101(3)(A), see id. ¶¶ 85–91.  Currently pending before the Court is the Defendant's Motion to Dismiss ("Def.'s Mot." or the "defendant's motion"), ECF No. 14, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Upon careful consideration of the parties' submissions,[3] the Court concludes for the following reasons that it must grant in part and deny in part the defendant's motion.

## I.     BACKGROUND

### A.     Factual Background

The plaintiff, Abeba Desta, "was employed as an OBXtek, Inc., [c]ontractor, examining and adjudicating medical claims in the Bureau of Medical Services [ ], Finance Office, Medical Claims Section, for the United States Department of State [ ] in Washington, D.C.[,]" Compl. ¶ 20, and "worked as a [Department] [c]ontractor from approximately November 4, 2007[,] to October 19, 2016[,]" id. ¶ 21.  During her employment, "[the p]laintiff's first-line supervisor was Harold Hodges [ ], Budget Officer, Grade Level GS-14[,]" id. ¶ 22, and "[the p]laintiff's second-line supervisor was Assefa Kidane, Deputy Executive Director, Grade Level GS-15[,]" id. ¶ 23.

The plaintiff represents that her "national origin is Ethiopian[,]" id. ¶ 17, and that she "[was] disabled, or regarded as being disabled, because she [had] been diagnosed with a chronic hearing problem since the age of seven [ ] years old[,]" id. ¶ 18.  The plaintiff alleged that "[t]hroughout the course of her employment . . . , [she] was subjected to repeated hostile and demeaning comments from her first-line supervisor, Hodges."  Id. ¶ 24.  "Specifically, [the p]laintiff observed that Hodges made demeaning comments on a regular basis during staff

---

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Pl.'s Opp'n"), ECF No. 16; and (2) the defendant's Reply in Support of Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 19.

meetings, when she met with him one-on-one, and [when] he stopped at her cubicle from time to time." Id. ¶ 25.  These comments included Hodges stating that "'she can't hear' and 'she has a hearing problem[,]' . . . in the presence of other staff members[,]" id. ¶ 26; "stopp[ing] by [her] cubicle on multiple occasions and call[ing] her different nicknames mimicking her real name, like 'Aboda' and 'Adeba[,]'" id. ¶ 27; "at times yell[ing] these names[,] . . . [while the p]laintiff corrected him[] [and] plead[ed] with [him] not to yell at her[,]" id. ¶ 30; and "regularly, constantly, and repeatedly t[elling] her that she 'was not fit to work in the medical claims section' and was 'incompetent[,]'" id. ¶ 32.  The plaintiff also alleges that "Hodges routinely requested to fire[,]" id. ¶ 35, employees "similarly-situated[,]" id., to the plaintiff, with respect to their national origin, see id. ¶ 40 ("Hodges['s] conduct amounted to a campaign o[f] intimidation and ultimately termination prejudiced against women of African origin[.]").  "Specifically, [the p]laintiff [contends that she] was aware that Hodges fired Lydia Hagos[,]" id. ¶ 36, and "Rachida El Alouani[,]" id. ¶ 38, both whom were of African descent, see id. ¶ 37 ("Lydia Hagos'[s] national origin is Eritrean."); id. ¶ 39 ("Rachida El Alouani's national origin is Moroccan.").

The plaintiff states that she "reported her treatment on multiple occasions to Ms. Greenlee, Senior Budget Analyst and [the p]laintiff's colleague, between October 2014 and October [20]16." Id. ¶ 48.  According to the plaintiff, Greenlee "was aware of Hodges['s] conduct because she had also been bullied and harassed by him, before management removed her from [his] supervision in 2012[,]" id. ¶ 52, and "observed that [the p]laintiff's national origin played a role in [her] harassment because although [she] attended evening courses for writing and communication to enhance her job performance, the harassment from Hodges persisted[,]" id. ¶ 53.  Greenlee also allegedly "observed that Hodges continued to behave in a demeaning manner towards [the p]laintiff because of her accent."  Id. ¶ 54 (emphasis in original).

"[The p]laintiff was terminated on October 19, 2016[,] after ten (10) years of employment[,]" id. ¶ 56, and "was informed . . . that her supervisor, Hodges, 'no longer wanted her services[,]'" id. ¶ 57.  The plaintiff states that she "was terminated despite being the most efficient and accurate employee in the medical claims section[,]" id. ¶ 61 (internal quotation marks omitted), as evidenced by the fact that she "created more claim records than other employees in fiscal year [ ] 2011 through 2012[,]" id. ¶ 62.  Subsequent to her termination, the plaintiff participated in Equal Employment Opportunity ("EEO") counseling.  See id. ¶¶ 2–3.  After receiving a Notice of Right to file on February 9, 2017, id. ¶ 3, the plaintiff "filed a formal complaint of discrimination with the Department on February 23, 2017[,]" id. ¶ 4.  "Investigation of this claim was conducted, and the Report of Investigation (['ROI']) and notice of rights were sent to [the p]laintiff and her representative on November 17, 2017."  Id. ¶ 6.  The complaint proceeded through the Equal Employment Opportunity Commission ("EEOC") adjudication process, see id. ¶¶ 7–11, and "the Department issued a Final Agency Decision on November 24, 2020[,]" id. ¶ 12.  The plaintiff then filed her complaint in this case on February 22, 2021, see id. at 1, which was "within 90 days after [she] received the Notice of Right to Sue on her EEOC complaint[,]" id. ¶ 13.

**B.    Procedural History**

On August 3, 2021, the defendant "move[d] for entry of an order staying all deadlines[,]" Joint Motion for Indefinite Stay at 1, ECF No. 7, in light of the fact that "the [p]laintiff is now deceased[,]" id. ¶ 2.  On August 27, 2021, the Court granted the defendant's motion "to the extent that it s[ought] to vacate all deadlines in th[e] case, except for the deadlines governing substitution pursuant to Federal Rule of Civil Procedure 25[,]" Order at 1 (Aug. 27, 2021), ECF No. 8, and ordered the plaintiff's counsel to file a notice of death by September 13, 2021, and

"move to substitute an administrator within ninety days after the filing of the [notice,]" id. at 2. The plaintiff's counsel filed the notice of the plaintiff's death on September 13, 2021, see Statement of Notice of Death at 1, ECF No. 9, and a motion to substitute Adam Bernahu as the named plaintiff in his capacity as the administrator of the plaintiff's estate on December 11, 2021, see Motion to Substitute Administrator as Party at 1, ECF No. 10. The Court granted the plaintiff's motion and substituted Adam Bernahu as the named plaintiff in this case on January 13, 2022.[4] See Minute ("Min.") Order (Jan. 13, 2022). On February 3, 2022, the defendant filed his motion to dismiss, see Def.'s Mot. at 1, the plaintiff then filed her opposition to the defendant's motion on March 3, 2022, see Pl.'s Opp'n at 1, and the defendant filed his reply on March 29, 2022, see Def.'s Reply at 1.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

---

[4] Although generally "the right of action for an injury to [a] person is extinguished by the death of the party injured[,]" Mich. Cent. R. Co. v. Vreeland, 227 U.S. 59, 67 (1913), under the District of Columbia Survival Act (the "D.C. Survival Act"), "[o]n the death of a person in whose favor or against whom a right of action has accrued for any cause prior to death, the right of action, for all such cases, survives in favor of or against the legal representative of the deceased[,]" D.C. Code § 12-101. Furthermore, "[t]he statute of limitations for a claim brought pursuant to the [D.C.] Survival Act is the statute of limitations applicable to the underlying claim, and the claim 'generally accrues on the date of the decedent's injury[.]'" Casey v. Ward, 67 F. Supp. 3d 45, 53 (D.D.C. 2014), rev'd on other grounds sub nom., Casey v. McDonald's Corp., 880 F.3d 564 (D.C. Cir. 2018) (quoting Arrington v. District of Columbia, 673 A.2d 674, 677–78 (D.C. 1996)) (internal citation omitted). And, a plaintiff's Title VII wrongful discharge claims "accrue[] on the date of his [or her] termination." Fortune v. Holder, 767 F. Supp. 2d 116, 122 (D.D.C. 2011). Therefore, because the plaintiff was terminated on October 19, 2016, see Compl. ¶ 56, her claim "accrued . . . prior to [her] death[,]" D.C. Code § 12-101; see Statement of Notice of Death at 1 (stating that the plaintiff died on July 5, 2020), for purposes of the D.C. Survival Act, and thus "the right of action . . . survives in favor of . . . [her] legal representative[,]" Adam Bernahu, D.C. Code § 12-101.

factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comn'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.   ANALYSIS

The defendant argues that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) for purposes of Title VII, "[the plaintiff] was a contractor and not employee of the [Department,]" Def.'s Mot. at 1; (2) "[the plaintiff] fails to allege any facts demonstrating national origin discrimination[,]" id.; and (3) the plaintiff "fails to state a claim" under the Rehabilitation Act, id.[5] In response, the plaintiff argues that she "should be

---

[5] The defendant also argues that the plaintiff "failed to exhaust administrative remedies for a Title VII retaliation claim" and that "[her] claim under the ADA must be dismissed because the ADA does not apply to the federal government." Def.'s Mot. at 1.

(continued . . .)

treated as an employee for the purposes of Title VII[,]" Pl.'s Opp'n at 4, "can sufficiently

establish the elements of her [n]ational [o]rigin discrimination claim[,]" id. at 8, and "can

sufficiently establish her prima facie Rehabilitation Act claim at this stage [of the case,]" id. at 9.

The Court will first consider the plaintiff's Title VII claim, including whether she qualified as an

employee for purposes of Title VII and whether she has alleged facts sufficient to demonstrate

discrimination based upon her national origin.  The Court will then consider the plaintiff's

Rehabilitation Act claim.

**A.      The Plaintiff's Title VII Claim**

**1.   Whether the Plaintiff Qualified as an Employee for Purposes of Title VII**

The Court must first determine whether the plaintiff qualified as an employee for

purposes of Title VII.  The defendant argues that "[b]ased on [the plaintiff's] own admissions

and [her] Employment Letter, she was not an employee of the [ ] Department; thus, her Title VII

claim against the [ ] Department should be dismissed."  Def.'s Mot. at 7.  In response, the

---

(. . . continued)
With respect to the plaintiff's Title VII retaliation claim, see Compl. ¶ 74 ("[The p]laintiff suffered adverse employment action when she was abruptly terminated from her employment, on the basis of her national origin, in close temporal proximity to the complaints that she voiced to management."), the plaintiff does not address the defendant's argument regarding her failure to exhaust her administrative remedies—nor does she address retaliation at all—in her opposition, see generally Pl.'s Opp'n.  Therefore, the Court will treat the challenges to the plaintiff's Title VII retaliation claim as conceded and grant the defendant's motion as to this claim.  See Rosenblatt v. Fenty, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.").

With respect to the plaintiff's ADA claim, the defendant is correct that "the ADA does not apply to the federal government[,]" Def.'s Mot. at 1.  See Klute v. Shinseki, 797 F. Supp. 2d 12, 17 (D.D.C. 2011) ("[T]he ADA does not apply to employees of the federal government because the federal government is not considered an 'employer' under the ADA."); 42 U.S.C. § 12111(5)(B)(i) (specifically excluding "the United States" from the definition of "employer").  Moreover, the plaintiff has not addressed the defendant's argument regarding her ADA claim, nor addressed her ADA claim at all, in her opposition, see generally Pl.'s Opp'n, which constitutes a concession as to this claim.  See Rosenblatt, 734 F. Supp. 2d at 22 ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.").  Therefore, the Court will also grant as conceded the defendant's motion as to the plaintiff's ADA claim.  Accordingly, the only remaining claims for the Court to consider are the plaintiff's claims that: (1) the defendant allegedly discriminated against her based upon her national origin in violation of Title VII, see Compl. ¶¶ 68–76; and (2) the defendant allegedly discriminated against her based upon her disability in violation of the Rehabilitation Act, see id. ¶¶ 77–84.

plaintiff argues that "the reality of [the p]laintiff's employment situation is that she was, for all material purposes, an employee of [the d]efendant" within the meaning of Title VII.  Pl.'s Opp'n at 4.

"Title VII cover[s] only those individuals in a direct employment relationship with a government employer" and thus, "[i]ndividuals who are independent contractors or those not directly employed by such an employer are unprotected."  Spirides v. Reinhardt, 613 F.2d 826, 829 (D.C. Cir. 1979); see 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination[.]" (emphasis added)).  In determining whether a plaintiff is an employee for purposes of Title VII, "[t]he 'most important factor to review' . . . is 'the extent of the employer's right to control the means and manner of the worker's performance.'"  Harris v. Attorney Gen. of U.S., 657 F. Supp. 2d 1, 9 (D.D.C. 2009) (quoting Spirides, 613 F.2d at 831) (internal quotation marks omitted).  In addition to this consideration, the Court must balance the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; [i].e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

Spirides, 613 F.2d at 832 (underline added).  Furthermore, "[c]onsideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative."  Id. at 831; see Ghori-Ahmad v. U.S. Comm'n on Int'l Religious Freedom, 969 F. Supp. 2d 1, 6

(D.D.C. 2013) ("To draw a distinction between employees and independent contractors is a 'relatively open-ended, fact-intensive inquiry.'" (quoting Konah v. District of Columbia, 815 F. Supp. 2d 61, 70 (D.D.C. 2011)).  However, "[n]othing in the Spirides line of cases suggests that a plaintiff must address all (or any) of the Spirides factors in order to survive a motion to dismiss." Ghori-Ahmad, 969 F. Supp. 2d at 6.  Rather, at this stage of the case, "[the plaintiff] need only plead factual content from which this Court can reasonably infer that she was a [Department] employee." Id. (citing Iqbal, 556 U.S. at 678); see id. ("At this stage it is unnecessary to undertake a comprehensive analysis of the Spirides factors in order to decide [a motion to dismiss].").

Here, the defendant argues that

> [t]he fifth, sixth, seventh, ninth, tenth, and eleventh Spirides factors – i.e., the method of payment, the manner in which the work relationship is terminated, whether annual leave is afforded, whether the worker accumulates retirement benefits, whether the 'employer' pays social security taxes, and the intention of the parties – all weigh in favor of finding that [the plaintiff] was a contractor, not an employee.

Def.'s Mot. at 7 (second underline added).[6]  In response, the plaintiff argues that the most important factor for consideration—whether the defendant had the "right to control the means and manner of the worker's performance[,]" Spirides, 613 F.2d at 831—weighs in favor of finding that the plaintiff was an employee for purposes of Title VII.  See Pl.'s Opp'n at 4–6.  Although the Court agrees with the defendant that factor eleven, and likely factors five, seven, and nine, all weigh in favor of finding that the plaintiff was not an employee, most of the

---

[6] The defendant also argues that the plaintiff "conceded that she was a contractor," Def.'s Mot. at 5, by identifying herself as a contractor in her Complaint, see Compl. ¶ 20.  However, the plaintiff has not conceded this point, see generally Pl.'s Opp'n at 4–7, and "the mere fact of nominal employment by an independent contractor will not relieve the master of liability where the servant is in fact in his employ[,]" Browning-Ferris Indus. of Cal., Inc. v. Nat'l Labor Relations Bd., 911 F.3d 1195, 1216 (D.C. Cir. 2018) (internal quotations marks and citation omitted). Therefore, the Court will analyze whether the plaintiff constituted an employee of the defendant for purposes of Title VII, despite her official status as a contractor.

remaining enumerated Spirides factors weigh in favor of finding that the plaintiff was an

employee for purposes of Title VII.  And most importantly, the Court finds that the defendant

had the "right to control and direct [her] work . . . not only as to the result to be achieved, but

also as to the details by which that result [was] achieved[,]" Spirides, 613 F.2d at 831–32.

The plaintiff indicates that she was "employed as an OBXtek, Inc., [c]ontractor[.]"

Compl. ¶ 20.  Thus, because the plaintiff's official employment relationship was with OBXtek,

Inc., the Court finds that the eleventh Spirides factor—"the intention of the parties[,]" Spirides,

613 F.2d at 832—weighs in favor of finding that the plaintiff was not an employee of the

defendant.  And, although as the plaintiff's official employer, OBXtek, Inc. may have also

provided the plaintiff's compensation, annual leave, and benefits, neither of the parties have

presented evidence or allegations which the Court may review at this stage of the litigation the

fifth, seventh, and ninth factors.[7]  Therefore, "constru[ing] the complaint in favor of the plaintiff,

who must be granted the benefit of all inferences that can be derived from the facts alleged[,]"

Hettinga, 677 F.3d at 476, the Court will assume that factors five, seven, and nine weigh in favor

of finding that the plaintiff was an employee of the defendant, but concludes that factor eleven

weighs in favor of finding that the plaintiff was not an employee of the defendant.

---

[7] The defendant cites to the plaintiff's letter of employment with OBXtek, Inc., which is attached as an exhibit to its motion, in support of its arguments regarding factors five, seven, and nine.  See Def.'s Mot. at 7.  However, "the Court may only consider the facts alleged in the complaint, any documents attached as exhibits thereto (or incorporated therein), and matters subject to judicial notice in weighing the merits of the motion."  Carswell v. Air Line Pilots Ass'n Int'l, 540 F. Supp. 2d 107, 114 (D.D.C. 2008) (Walton, J.) (citing Equal Emp. Opportunity Comm'n, 117 F.3d at 624–25).  The Court may take judicial notice of the plaintiff's EEOC Complaint, which is attached to the defendant's motion, because it is a public document.  See Ahuja v. Detica Inc., 742 F. Supp. 2d 96, 103 (D.D.C. 2010) (stating that, as an exception to the rule that the Court may not consider attachments to a motion to dismiss, that it "may [ ] consider [the p]laintiff's EEOC Complaint and Notice of Charge" attached to the defendant's motion); Wiley v. NEBF Invs., No. 09-cv-223 (ESH), 2010 WL 114953, at *1 n.1 (D.D.C. Jan. 12, 2010) (considering the plaintiff's EEOC charge because it was a public document, of which the Court could take judicial notice).  However, the Court may not consider the plaintiff's employment letter.  See Jianqing Wu v. Special Counsel, Inc., 54 F. Supp. 3d 48, 51 (D.D.C. 2014) ("[The Court] may not, however, consider documents presented for the first time as an attachment to a motion to dismiss or an opposition.").

However, the plaintiff contends that her work was "usually [ ] done under the direction of a supervisor[,]" <u>Spirides</u>, 613 F.2d at 832 (factor one), employed by the defendant.[8]  She alleges that Hodges, a Department employee, was her "first-line supervisor[,]" Compl. ¶ 22, and Assefa Kidane, another Department employee, was her "second-line supervisor[,]" <u>id.</u> ¶ 23.  Based on these allegations, the Court concludes that factor one weighs in favor of finding that the plaintiff was an employee of the defendant.  According to the plaintiff, the defendant also "furnishe[d] equipment used [by the plaintiff] and [her] place of work[,]" <u>Spirides</u>, 613 F.2d at 832 (factor three), as evidenced by the plaintiff's references to her work "cubicle" within location where Hodges performed his supervisory duties, <u>see</u> Compl. ¶¶ 25, 27 (referencing Hodges, an employee of the defendant, "stopp[ing] at her cubicle from time to time" and "on multiple occasions"), and the plaintiff "worked as a [Department] [c]ontractor from approximately November 4, 2007[,] to October 19, 2016[,]" <u>id.</u> ¶ 21—a significant "length of time[,]" <u>Spirides</u>, 613 F.2d at 832 (factor four).  Accordingly, the Court also finds that factors three and four weigh in favor of finding that the plaintiff having been an employee of the defendant.

Moreover, although the plaintiff was an OBXtek, Inc. contract employee, <u>see</u> Compl. ¶ 20, and OBXtek, Inc. ultimately terminated her employment, <u>see id.</u> ¶ 57, Hodges likely played a significant role in "the manner in which the work relationship [was] terminated[,]" <u>Spirides</u>, 613 F.2d at 832 (factor six).  Specifically, the plaintiff alleges that when she was terminated, she "was informed by Dawn Mathes [ ], Project Manager, OBXtek, Inc., that her supervisor, Hodges, 'no longer wanted her services.'"  Compl. ¶ 57.  "[The p]laintiff [contends that she] was also

---

[8] Like the defendant, the plaintiff relies on attachments submitted with her opposition to the defendant's motion to dismiss, specifically the Report of Investigation completed as part of the EEO investigation process in the Department.  However, as with the defendant's attachments, the Court may not consider attachments submitted with the plaintiff's opposition and instead must confine its review to "the facts alleged in the complaint, [and] any documents attached as exhibits thereto (or incorporated therein)," <u>Carswell</u>, 540 F. Supp. 2d at 114.  <u>See</u> <u>Jianqing Wu</u>, 54 F. Supp. 3d at 51 ("[The Court] may not, however, consider documents presented for the first time as an attachment to a motion to dismiss or an opposition."); <u>see also</u> <u>infra</u> Sections III.A.2, III.B.

informed by Mathes that Hodges claimed [the p]laintiff had not done anything wrong, it was not a performance issue, and that it was unclear whether Hodges would be hiring behind [the p]laintiff." Id. ¶ 58.  Thus, although OBXtek, Inc. retained the power to ultimately terminate the plaintiff's employment, the plaintiff has pleaded facts sufficient to show that her termination was the direct result of her Department supervisor's request that her employment be terminated. Therefore, the defendant allegedly played a significant role in "the manner in which the [plaintiff's] work relationship [was] terminated[,]" Spirides, 613 F.2d at 832—namely, by purportedly serving as the impetus for the termination—and, accordingly, the Court concludes that factor six weighs in favor of finding that the plaintiff constituted an employee of the defendant.

Finally, regarding the eighth enumerated Spirides factor, the plaintiff's work as a medical claims examiner is also seemingly an "integral part of the business of the [Department,]" id., specifically that of the "Bureau of Medical Services [ ], Finance Office, Medical Claims Section," where the plaintiff worked, see Compl. ¶ 20.  Although this factor is not specifically addressed by either party, see generally Def.'s Mot.; Pl.'s Opp'n; Def.'s Reply, "constru[ing] the complaint in favor of the plaintiff . . . [and] grant[ing] her the benefit of all inferences that can be derived from the facts alleged[,]" Hettinga, 677 F.3d at 476, it appears to the Court that, more likely than not, "examining and adjudicating medical claims[,]" Compl. ¶ 20, is a core function of the "Medical Claims Section," id.  Accordingly, the Court concludes that factor eight weighs in favor of finding that the plaintiff constituted an employee of the defendant.

Most importantly, the Court concludes that the Department retained the "right to control the means and manner of the [plaintiff's work] performance[,]" Harris, 657 F. Supp. 2d at 9, to

the extent sufficient to qualify the plaintiff as an employee of the Department for the purposes of

Title VII.  This conclusion is supported by the plaintiff's allegations that her

> daily tasks were directed, monitored, and evaluated by [ ] Hodges . . . , as
> evidenced by: (1) the fact that [the p]laintiff and Hodges met regularly to evaluate
> the results of her medical claims processing and work product; (2) Hodges
> regularly reviewed the quality of her work; (3) Hodges on occasion emailed [her]
> to inquire about the status of medical claims; (4) Hodges made determinations as
> to how [she] should communicate with clients; and (5) Hodges even often walked
> by [her] cubicle to speak with her about her work.

Pl.'s Opp'n at 6.  Furthermore, as previously noted, the plaintiff alleges that Hodges was her

direct supervisor, see Compl. ¶ 22, and it was allegedly his request that provided the impetus for

her termination, see id. ¶¶ 57–58.  By allegedly "direct[ing], monitor[ing], and evaluat[ing,]"

Pl.'s Opp'n at 5-6, the plaintiff's day-to-day work, her Department supervisor "exercised the

primary control over [the] plaintiff's work[,]" Harris, 657 F. Supp. 2d at 10; see id. at 11 (finding

that the contractor plaintiff was an employee of the defendant where the defendant "actually

controlled the substantive aspects of the [plaintiff's] tasks").  In contrast, OBXtek, Inc.'s role

"was [likely] largely limited to providing paychecks and administering benefits."  Id. at 12.

Thus, because the Department seemingly retained primary control over the plaintiff's work

performance, see Int'l Union v. Clark, No. 02-cv-1484 (GK), 2006 WL 2598046, at *8 (D.D.C.

Sept. 11, 2006) (finding that the plaintiff was an employee where the defendant specified the

manner in which the plaintiff's daily tasks would be performed, provided essential equipment for

the plaintiff to perform her job, and decided whether to terminate and replace the plaintiff with a

new contract employee), the Court finds that the "'most important factor to review[,]" Spirides,

613 F.2d at 831—namely, "the extent of the employer's right to control the means and manner of

the worker's performance[,]" id., weighs in favor of finding that the plaintiff constituted an

employee for purposes of Title VII.  Therefore, mindful of the requirements regarding this

inquiry at the motion to dismiss stage, see Ghori-Ahmad, 969 F. Supp. 2d at 6 (stating that, at the motion to dismiss stage, "[the plaintiff] need only plead factual content from which this Court can reasonably infer that she was a [Department] employee"), the Court concludes that this "most important factor[,]" id., combined with the Court's findings regarding Spirides factors three through nine, adequately establish at this stage of the case that the plaintiff was an employee of the defendant for purposes of Title VII.  See Harris, 657 F. Supp. 2d at 11–12 (finding that the plaintiff constituted an employee even though "from a purely quantitative perspective, a greater number of the secondary Spirides factors favor[ed] [the] defendant's stance that [the] plaintiff was not a federal employee" because some factors, including the most important factor—"control"—weighed in favor of finding that the plaintiff was an employee). Having concluded that the plaintiff has adequately alleged that she was an employee of the Department for purposes of Title VII, the Court now turns to the plaintiff's discrimination claim based upon her national origin.

## 2. Whether the Plaintiff Has Established Discrimination Based Upon Her National Origin

The defendant argues that the plaintiff's Title VII "discrimination claim should [ ] be dismissed because [she] has alleged no facts showing that any of the adverse actions were connected to [the plaintiff's] protected status, i.e., her national origin."  Def.'s Mot. at 8.  In response, the plaintiff argues that she "can sufficiently establish the elements of her [n]ational [o]rigin discrimination claim."  Pl.'s Opp'n at 8.  Specifically, the plaintiff states that she is a member of a protected class because her "national origin is Ethiopian[,]" she "suffered an adverse employment action because she was terminated from her position[,]" and that her "termination gives rise to an inference of discrimination because the administrative record

reflects that on prior occasions, [the p]laintiff observed [ ] Hodges making ethnically charged negative comments about foreigners."  Id.

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Under the McDonnell Douglas burden-shifting framework, "the plaintiff ultimately bears the burden of establishing the specific requirements of a prima facie case of employment discrimination, but that burden does not apply with full force at the motion to dismiss stage."  Thomas v. Wash. Metro. Area Transit Auth., 305 F. Supp. 3d 77, 84 (D.D.C. 2018); see McDonnell Douglas v. Green, 411 U.S. 792 (1973); see also Attakora v. District of Columbia, 943 F. Supp. 2d 152, 157 (D.D.C. 2013) ("The pleading burden at this stage of the proceedings is not great, and courts in this Circuit have consistently recognized the 'ease with which a plaintiff claiming employment discrimination can survive a . . . motion to dismiss.'" (quoting Rouse v. Berry, 680 F. Supp. 2d 233, 236 (D.D.C. 2010) (alteration in original)).  However, although "an employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case [of discrimination] to survive a [Rule 12(b)(6)] motion to dismiss," Jones v. Air Line Pilots Ass'n, 642 F.3d 1100, 1104 (D.C. Cir. 2011), the plaintiff must nevertheless "plead sufficient facts to show a plausible entitlement to relief," Rodriguez v. Donovan, 922 F. Supp. 2d 11, 17 (D.D.C. 2013).  Therefore, "[t]o state a prima facie case of discrimination, a plaintiff must allege [that] she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination."  Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015).

Here, the plaintiff has established that she is a member of a protected class with regard to

national origin discrimination because her "national origin is Ethiopian[.]" Compl. ¶ 17; see

Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88 (1973) (defining "national origin" for purposes

of Title VII as "the country where a person was born, or, more broadly, the country from which

his or her ancestors came").  She has also established that she suffered an adverse employment

action as a result of the termination of her employment.  See id. ¶ 56; Taylor v. Small, 350 F.3d

1286, 1293 (D.C. Cir. 2003) (defining an "adverse employment action" as "a significant change

in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing significant change in benefits" (emphasis added)).

Thus, the remaining question for the Court to consider is whether the plaintiff has "plead[ed]

sufficient facts to show a plausible entitlement to relief," Rodriguez, 922 F. Supp. 2d at 17,

regarding her claim that she was discriminated against based upon her national origin.  In support

of this component of her discrimination claim, the plaintiff alleges that she "observed [ ] Hodges

ma[k]e demeaning comments on a regular basis during staff meetings, when she met with him

one-on-one, and [when] he stopped at her cubicle from time to time."  Compl. ¶ 25.  She further

alleges that Hodges would "call[] her different nicknames mimicking her real name, like 'Aboda'

and 'Adeba[,]'" id. ¶ 27, that "[o]ther employees [would] laugh[] at [the p]laintiff when they

heard Hodges['s] insults[,]" id. ¶ 28, and that Hodges "would at times yell these names[, while

the p]laintiff corrected him . . . [and] plead[ed] with Hodges not to yell at her[,]" id. ¶ 30.  The

plaintiff also identifies examples of similar behavior exerted against similarly-situated

employees, stating that "Hodges routinely requested to fire similarly-situated employees[,]" id.

¶ 35, and "[s]pecifically, [the p]laintiff was aware that Hodges fired Lydia Hagos[, whose

national origin is Eritrean,]" id. ¶ 36; see id. ¶ 37, and "Rachida El Alouani[, whose national

origin is Moroccan,] during [the p]laintiff's tenure with [the d]efendant[,]" id. ¶ 38; see id. ¶ 39.

Although the Court may not consider the administrative record at this stage of the case, as

requested by the plaintiff, because it was attached to her opposition and not her Complaint, see

Carswell v. Air Line Pilots Ass'n Int'l, 540 F. Supp. 2d 107, 121 (D.D.C. 2008) (Walton, J.)

(finding that the Court could not consider factual allegations in an exhibit attached to the

plaintiff's opposition to a motion to dismiss), the Court concludes that the plaintiff has

"plead[ed] sufficient facts to show a plausible entitlement to relief," Rodriguez, 922 F. Supp. 2d

at 17, based upon the allegations concerning national origin discrimination contained in her

Complaint.  "[A]ssum[ing] the truth of all material factual allegations in the complaint[,]" Am.

Nat'l Ins. Co., 642 F.3d at 1139, as is required at the motion to dismiss stage, the plaintiff has

alleged "specific statements purportedly made by [Hodges] reflecting an animus against

individuals of African descent[,]" Attakora, 943 F. Supp. 2d at 157; see Compl. ¶¶ 24–25, 27–30,

as well as past terminations of individuals of African descent which further contribute to an

inference of this same discriminatory animus, see Compl. ¶¶ 35–40.  These factual allegations, in

combination with the fact that there appear to be "no prior complaints regarding the [p]laintiff's

[work] performance," Attakora, 943 F. Supp. 2d at 157; see Compl. ¶¶ 61–62 (stating that "[the

p]laintiff was terminated despite being the most efficient and accurate employee in the medical

claims section" and "creat[ing] more claim records than other employees in fiscal year [ ] 2011

through 2012" (internal quotation marks omitted)), raise a plausible inference at this stage of the

litigation that the plaintiff was terminated based upon her national origin.  See Attakora, 943 F.

Supp. 2d at 157 ("The Amended Complaint identifies specific statements purportedly made by

[defendant] reflecting an animus against individuals of African descent[.] . . . [A]llegations

that [the defendant] was generally biased against individuals of African national origin, in combination with no prior complaints regarding the [p]laintiff's performance, makes it plausible for the [p]laintiff to claim that he was discharged because of his national origin.  Therefore, at th[e motion to dismiss] stage, the Court finds the [p]laintiff has stated a claim for national origin discrimination[.]").  Accordingly, the Court concludes that the plaintiff has "plead[ed] sufficient facts to show a plausible entitlement to relief," Rodriguez, 922 F. Supp. 2d at 17, regarding her claim that the defendant discriminated against her based upon her national origin, and the Court must therefore deny the defendant's motion to dismiss the plaintiff's Title VII national origin discrimination claim.

**B.      The Plaintiff's Rehabilitation Act Claim**

The defendant argues that the plaintiff's Rehabilitation Act claim "should be dismissed for failure to state a claim" because "[t]he Complaint is devoid of any facts that OBXtek, Inc. or the [ ] Department had knowledge of [the plaintiff's] disability."  Def.'s Mot. at 14.  In response, the plaintiff argues that she "can sufficiently establish her prima facie Rehabilitation Act claim at this stage[,]" Pl.'s Opp'n at 9, based on the fact that she "alleged in the administrative record that: (1) [ ] Hodges was aware of her disability; (2) she reminded him of her medical issue; and (3) she regularly wore a hearing aid[]—an obvious sign of a hearing disability[,]" id.

The Rehabilitation Act prohibits federal agencies from discriminating against employees on the basis of a disability.[9]  29 U.S.C. § 794(a); see Taylor v. Rice, 451 F.3d 898, 905 (D.C. Cir. 2006) (stating that the Rehabilitation Act provides a private right of action against federal

---

[9] Because the Court has concluded that the plaintiff has adequately alleged in her Complaint that she qualified as an employee for purposes of her Title VII claims, see supra Section III.A.1, the Court also concludes that the plaintiff has adequately pleaded that she qualified as an employee for purposes of the Rehabilitation Act.  See Turner v. District of Columbia, 383 F. Supp. 2d 157, 176 (D.D.C. 2005) (stating that the Rehabilitation Act incorporates the "standards" of the ADA, which incorporates that "powers, remedies, and procedures set forth in [Title VII]," and therefore, the Rehabilitation Act also incorporates the "powers, remedies, and procedures" of Title VII).

agencies for employment discrimination claims on the basis of a disability).  To state a claim for

relief under the Rehabilitation Act, the plaintiff must plead sufficient facts to establish that "(i)

[she] suffered an adverse employment action (ii) because of [her] . . . disability."  Baloch v.

Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  Additionally, the plaintiff must plead facts

sufficient to show that her employer "must have acted with an awareness of the disability itself,

and not merely an awareness of some deficiency in the employee's performance that might be a

product of an unknown disability."  Crandall v. Paralyzed Veterans of Am., 146 F.3d 894, 897

(D.C. Cir. 1998).  Finally, in making these assessments, the Court is mindful that "[c]laims and

defenses under [the Rehabilitation Act and the ADA] are virtually identical[,]" Harrison v.

Rubin, 174 F.3d 249, 253 (D.C. Cir. 1999), and "cases interpreting either are applicable and

interchangeable[,]" Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1260 n.2 (D.C. Cir.

2008) (internal quotation marks omitted).

      To reiterate, in deciding a motion to dismiss, "the Court may only consider the facts

alleged in the complaint, any documents attached as exhibits thereto (or incorporated therein),

and matters subject to judicial notice in weighing the merits of the motion."  Carswell, 540 F.

Supp. 2d at 114 (citing Equal Emp. Opportunity Comm'n, 117 F.3d at 624–25).  Furthermore,

"the sparse case law addressing the effect of factual allegations in briefs or memoranda of law

suggests that such matters may never be considered when deciding a [Rule] 12(b)(6) motion."

Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994); see Carswell, 540 F. Supp. 2d at

121 (finding that the Court could not consider factual allegations in an exhibit attached to the

plaintiff's opposition to a motion to dismiss).  Therefore, the Court may not consider the Report

of Investigation, referenced by the plaintiff in support of her Rehabilitation Act claim, see Pl.'s

Opp'n at 9, because it constitutes a "document[] presented for the first time as an attachment

to . . . an opposition[,]" Jianqing Wu, 54 F. Supp. 3d at 51.  Nonetheless, the Court concludes

that the plaintiff has "plead[ed] sufficient facts to show a plausible entitlement to relief,"

Rodriguez, 922 F. Supp. 2d at 17, based upon the allegations concerning disability

discrimination contained in her Complaint and the EEO complaint attached to the defendant's

motion, see Def.'s Mot., Exhibit ("Ex.") B (Formal Complaint of Discrimination ("EEO

Complaint")), ECF No. 14-2, of which the Court has taken judicial notice and can therefore

consider, see supra note 7.

Here, there can be no questions that the plaintiff suffered an adverse employment action

as a result of the termination of her employment.  See Compl. ¶ 56; see also supra Section

III.A.2.  The plaintiff has adequately alleged that she also "was a qualified individual with a

disability, or an individual regarded as being disabled, because she contends that she was

diagnosed with a chronic hearing disability since the age of seven[,]" Compl. ¶ 80, and the

defendant does not dispute this point, see generally Def.'s Mot.; Def.'s Reply.  Additionally,

although the defendant is correct that the defendant "must have acted with an awareness of the

disability itself," Crandall, 146 F.3d at 897, the Court finds that the plaintiff has pleaded

sufficient facts to show that her Department supervisor more likely than not had knowledge of

her hearing disability based upon his comments, see Compl. ¶ 26 ("[The p]laintiff observed

Hodges make comments including, but not limited to 'she can't hear' and 'she has a hearing

problem[,]'[] which were [allegedly] made in the presence of other staff members."); Def.'s

Mot., Ex. B (EEO Complaint) at 4 (stating that Hodges "yells down looking at [the plaintiff] 'Do

you hear me[?]'" and "most of the time he walks by [her] cubicle [and] makes a short stop and

loudly [un]til[] everybody hears it in their cubicle [says] 'Did you hear [m]e?'").  Therefore, the

remaining question for the Court to consider is whether the plaintiff has "plead[ed] sufficient

facts to show a plausible entitlement to relief," <u>Rodriguez</u>, 922 F. Supp. 2d at 17, regarding her claim that she was discriminated against based upon her disability.

In support of her disability claim, the plaintiff alleges that she "was subjected to repeated hostile and demeaning comments from her first-line supervisor, Hodges[,]" Compl. ¶ 24, including comments by Hodges made "on more than one occasion[,]" <u>id.</u> ¶ 26, that "'she can't hear' and 'she has a hearing problem[,]'[] which were made in the presence of other staff members[,]" <u>id.</u>  Additionally, the plaintiff's EEO complaint indicates that Hodges "[a]lways trie[d] to downgrade [her] or look [down] at [her] [ ] after [she] gave the best answer of participation in [a] meeting[,] yell[ing] . . . 'Do you hear me[?]'" Def.'s Mot., Ex. B (EEO Complaint) at 4.  The plaintiff further states that Hodges "always want[ed] to attack and down[]grade [her] by capitalizing [on her] . . . disability which never interfered with [her] job[,]" <u>id.</u>, Ex. B (EEO Complaint) at 4, and "most of the time [ ] walk[ed] by [her] cubicle[,] [ ] ma[de] a short stop and loudly [un]til[] everybody hear[d] it in their cubicle [said] 'Did you hear [m]e?[,]'" <u>id.</u>, Ex. B (EEO Complaint) at 4.

"[A]ssum[ing] the truth of all material factual allegations in the complaint[,]" <u>Am. Nat'l Ins. Co.</u>, 642 F.3d at 1139, and recognizing the plaintiff's burden of proving a prima facie case of discrimination "does not apply with full force at the motion to dismiss stage[,]" <u>Thomas</u>, 305 F. Supp. 3d at 84, the Court finds that the plaintiff's allegations regarding repeated and continuous remarks made by her supervisor constitute sufficient evidence at this stage to establish an inference of discrimination based on her disability.  Although, unlike her allegations concerning national origin discrimination, the plaintiff's allegations concerning disability discrimination rest only on Hodges's remarks from which it can be inferred were related to her disability, these allegations present "probative evidence of [her] supervisor's discriminatory attitude[,]" <u>Morris v.</u>

McCarthy, 825 F.3d 658, 670 (D.C. Cir. 2016), especially because they appear to have been "targeted directly at the plaintiff [and were part] of a pattern of similar remarks[,]" id. Specifically, they are indicative of a plausible factual finding that "[Hodges] harbored discriminatory animus against individuals with disabilities[,]" Hall v. Wash. Metro. Area Transit Auth., No. 19-cv-1800 (BAH), 2020 WL 5878032, at *11 (D.D.C. Oct. 2, 2020), particularly in light of the manner in which these remarks were allegedly delivered, compare, e.g., id. (finding a supervisor's remarks probative of discriminatory animus where the "remarks allegedly were made frequently and sharply enough to reduce [the] plaintiff to tears[ and] were at times made within earshot of [the] plaintiff's coworkers"), with Compl. ¶ 26 (alleging that remarks regarding the plaintiff's disability were routinely made "in the presence of other staff members"), and Def.'s Mot., Ex. B (EEO Complaint) at 4 (stating that Hodges "ma[de the plaintiff] cry in the office almost every day by undermining [her] humanity [and] reducing [her] from an educated accountant and result[-]deliverer to [a] disabled deaf person").  The Court therefore concludes that the plaintiff's allegations concerning Hodges's remarks are "enough to permit an inference of disability-based bias[,]" Conn v. Am. Nat'l Red Cross, 149 F. Supp. 3d 136, 150 (D.D.C. 2016), such that this potential discriminatory animus could have been a "motivating[ ]factor[,]" id., in Hodges's request that the plaintiff be terminated.  Accordingly, the Court concludes that the plaintiff has "plead[ed] sufficient facts to show a plausible entitlement to relief," Rodriguez, 922 F. Supp. 2d at 17, regarding her claim that the defendant discriminated against her based upon her disability, and the Court must therefore deny the defendant's motion to dismiss the plaintiff's Rehabilitation claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendant's motion to dismiss.  The motion is granted as to: (1) Count I of the Complaint, to the extent that it alleges a retaliation claim; and (2) Count III of the Complaint in its entirety. The motion is denied in all other respects.

**SO ORDERED** this 30th day of November, 2022.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.